No. 36,778

THE STATE OF KANSAS, *Appellee*, v. LAWRENCE LIEBENO, *Appellant*.

(183 P. 2d 419)

RUSSELL C. HARDY, judge. Opinion filed July 12, 1947.

*Joseph H. McDowell*, of Kansas City, argued the cause, and was on the briefs for the appellant.

*Harold H. Harding*, county attorney, argued the cause, and *Edward F. Arn*, attorney general, *Harold R. Fatzer*, assistant attorney general, *Oliver Q. Claflin, III*, and *Tudor M. Nellor*, assistant county attorneys, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: Lawrence Liebeno was charged under G. S. 1935, 21-424, of forcibly ravishing a thirteen-year-old girl. A jury trial resulted in a verdict of guilty, as charged. The trial court overruled his motion for a new trial, and upon competent evidence found that defendant had twice previously been convicted of felony. The court sentenced him under G. S. 1945 Supp. 21-107a to confinement in our state penitentiary "for the period of his natural life, unless sooner released by competent authority." Defendant has appealed.

The evidence which the triers of fact cannot be criticized for believing may be summarized briefly as follows: The girl was a student in the junior high school in Leavenworth. She lived with her

mother, who taught a sixth-grade class in the Leavenworth schools. On April 2, 1946, when her school was out, shortly after three o'clock, she delivered a paper she had written to her teacher and started to walk to her home. She was carrying school books, a pencil and a small brown leather purse in which was her locker key, 35 cents in change and a slip of paper on which was written her name and address. She was wearing a brown skirt, a green blouse, shoes and stockings, but no coat. As she was walking along the sidewalk, defendent, driving a Chevrolet coupé, drove up to the curb and said, "Come here a minute, young lady." She thought he wanted to inquire about directions and went near his car. He asked her if she would like a job at the Hollywood theater taking tickets. She told him she did not because she had to stay at home with her mother. He said that it paid good. She started to walk away and he said, "Get in," real crossly. She was frightened and got in the car. He drove to the south on Highway 73 and kept talking to her about jobs and the good pay she might receive. When he reached the intersection of an east and west highway at the Wallula store he turned east on a dirt road, known as the Goode Road, and traveled about two miles, crossed a bridge and stopped on the south side of the road, two wheels of the car being off the traveled portion. He spoke of being lost and said he couldn't find the boss's house. He told her to put her books on the shelf behind the seat. She said she would just hold them. He took a wrench out of the glove compartment of the car and told her to put her books back there, which she did. He took his glasses off and put them back there. He then told her that he would kill her with the wrench if she didn't do what he said. She was frightened. He told her to get out of the car. She did. He held the wrench in his hand and told her he would hit her over the head with it if she didn't do what he told her to. She said, "If I get out and you don't hurt me, will you take me back home?" He had her crawl under a wire fence; he climbed over it, and they walked south into the woods, where there were small trees and bushes. He told her not to scream, that he would hit her with the wrench. He had a blanket which he had brought from his car and spread it on the ground. Her blouse had three buttons; the top one was not buttoned. He grabbed the blouse near her neck and tore it off her. One of the buttons came off, the other was broken. He threatened her again, told her to take her clothes off and to lie down. She did so. He removed his clothes and had sexual intercourse with

her. He then had her get up and put her clothes on and he put on his. They walked back to the car. He told her to get in the car and to lie down on the floor so no one could see her, which she did. After they got into the car he drove a short distance and turned around in a driveway or intersection and drove back to Leavenworth, the same route he had driven. He kept the wrench in his hand, or on the seat near him. When they got into Leavenworth he told her not to scream or he would kill her and that if she ever told anyone about it he would kill her. He let her out several blocks from her home and she walked home. When she reached home her mother had not come from her daily teaching, but did arrive about five o'clock. She promptly told her mother all that had happened. The mother called Leo R. Channell, an osteopath physician. He had been in the practice of his profession in Leavenworth for a number of years and had previously treated the family. He found the girl had bruises and scratches on her body, her vagina had been injured—entrance had been made; the hymen was torn. While the hemorrhage was not great there was blood on her legs and on her clothing. He gave her a cleansing douche to cleanse the body and to make sure she would not have any trouble with infection or the possibility of pregnancy. The girl had noticed the car in which defendant had taken her, and particularly the interior of it. The instrument panel had been painted with a grey paint, evidently with a paint brush, for it was streaked. The ignition key ring had a red dice on it. There was a floor lever shift which had a white knob at the top, described by her as like a door knob but smaller. There were a few dark streaks on that and it had two distinct parallel marks across it. The seat had a woven straw mat seat cover with different colored straws, and upon the end of the seat where she sat there was a large blotch such as might have been made at some time by spilled ink or some other fluid. She gave a fairly good description of defendant except that she slightly overestimated his weight and height and estimated his age at 35. The evidence proved he was 29.

The matters were reported to the sheriff's office at Leavenworth and an undersheriff took up the investigation. He talked with the girl and that evening had her go with him over the route defendant's car had traveled. The investigation was continued the next day by the sheriff's force. Near the bridge one of them noticed tracks of an automobile and a truck, and east of the bridge again noticed

the tracks of the automobile on the south side of the road. He later noticed them where the car had turned around. He was familiar with various makes of tires and the imprints they make. He went to the place where the offense occurred and there found the girl's purse, which still contained the locker key, her change, 35 cents, and the slip of paper with her name and address. He also found a button which had been torn from her blouse and the half of another button, which had been broken in two. He later found the other half of the button in defendant's car near the edge of the floor. He found the distance from Leavenworth to the place of the offense, measured by his speedometer, was 10.2 miles. He timed his driving speed to the place as 16 or 17 minutes. He made further investigations and the next day went to the home of the defendant, which was farther east than the place of the crime. There he found in the yard the automobile which had the peculiar interior marks described by the girl. He also noticed the tires on the right side of the car and particularly the tire on the right front side. He compared the imprints of the tires made on the road near the scene of the crime and at the bridge and where the car was turned and found them to correspond with the tires on defendant's car. When he examined the tracks he had noticed that the front tire appeared to have a place cut out of one side. The tire on the right wheel of plaintiff's car had such a place cut out such as would be made by hitting a stone or some sharp object. He had defendant take the car into town and the girl examined it. She had thought the color of the car in which she rode was green, but when the car was brought in it looked blue. There was also some difference in the floor covering. She was hesitant about identifying it positively, although it did have the interior peculiarities which she had noticed. Defendant was kept in jail that night. The next morning he and seven other inmates of the jail were brought out into the show-up room. The girl was brought in and asked if she could identify any of the persons as the one who had been with her on April 2. She promptly identified defendant. The place where the crime was committed is in Wyandotte county, so the sheriff of that county was notified.

E. R. Edwards, sheriff of Wyandotte county, and his two deputies, Ray Welty and W. R. Wilson, went to Leavenworth on April 5 and took the defendant to the sheriff's office at Kansas City. On the way the sheriff asked defendant if he wanted to tell the sheriff

anything. Defendant answered that he would rather tell the sheriff than anyone because he knew that the sheriff would treat him right if he told the truth. He then went ahead and told about having the girl get in his car in Leavenworth and talking to her about getting a job and driving to the place where he stopped his car, and that he got the girl out of the car, through the fence, and "that he attacked her." He said he held her hand while he was getting through the fence and told her not to scream because there wasn't a house within a quarter of a mile and "that he would kill her if she screamed or made any noise." He further stated that as a result of his attack "that he got satisfaction."

On reaching his office the sheriff obtained the services of the shorthand reporter of the county attorney's office and told defendant he would like to have a statement of the facts for the records of his office. Defendant stated that he did not want to sign anything, and the sheriff told him he need not sign it. Answering questions propounded him by the sheriff he told the story of the offense substantially as the girl had told it to the officers of Leavenworth county and later on the witness stand, with the exception that defendant said the completed offense was not accomplished, that what he did was only an attempt to accomplish it. At Kansas City he made statements also to a newspaper reporter and to an assistant county attorney which were not taken in writing but were in accord with the statements which were taken by the stenographer.

In this court appellant first contends that the verdict was contrary to the law and the evidence. There was a lengthy trial which began on July 10 and was completed July 17. Capable, experienced attorneys appeared on each side. No detail in presenting evidence or legal questions was overlooked. It would serve no useful purpose to go through this evidence at greater length than the general summary above stated.

Under this head counsel for appellant argues that no penetration was shown beyond a reasonable doubt. The point is not well taken. The girl's specific testimony on that point is supported by the testimony of the osteopathic physician. The only thing in the evidence which tends to controvert it is contained in the statement of the defendant made to the sheriff of Wyandotte county. The weight to be given to this evidence was for the triers of fact.

Counsel for appellant also argues that the verdict was contrary to the law and evidence because defendant established an alibi. It

is true he offered evidence tending to support an alibi. Much evidence was offered to the contrary. This again was a question of fact.

Counsel for defendant argues it was error to permit the stenographer to read questions and answers propounded to defendant by the sheriff of Wyandotte county. When the transcript of the statement was offered in evidence it was objected to as having been obtained by threats which amounted to duress. Preliminary to the ruling upon the objection the court, in the absence of the jury, heard evidence as to the circumstances under which the statement was made. This disclosed no threats or duress. The state did not use the transcript of the testimony, but called the stenographer and had her read from her notes. Testifying in his own behalf the defendant admitted that the questions were propounded to him by the sheriff and that he made the answers as read by the stenographer from her notes. His testimony was that the answers he made were not true and that he made them because the sheriff had told him that if he did not answer the questions he, the sheriff, would send for defendant's wife and for a Mr. Wycoff, and that he did not want them brought in and questioned. The triers of fact had a right to, and no doubt did, consider his testimony in that regard and all the other testimony bearing upon the question. The testimony of the stenographer was rightfully received.

Counsel for defendant contends that it was improper to receive the testimony of the osteopathic physician for the reason that a regular medical physician should have been called. The point is not well taken. The witness testified that he had been graduated from the osteopathic college in Kansas City in 1910 and duly licensed to practice osteopathy by the State Board of Osteopaths; that in the school the study of anatomy was stressed and that this included the study of female as well as male anatomy; that he had practiced his profession in Leavenworth for 36 years, the principal portion of his practice being obstetrics, which included the examination of the vaginal tract of female patients. The weight of his testimony was, of course, for the triers of fact. We think the court correctly ruled him competent to testify.

Counsel for appellant has mentioned in his brief several rulings of the court upon the admission of evidence which he thinks are subject to criticism. We have examined all of those and what counsel has said about them and find that they are trivial in the extreme and do not need special treatment in this opinion.

Finally it is argued that under G. S. 1945 Supp. 21-107a the sentence should have been for an indefinite term of not less than fifteen years. The statute says "for a period of not less than fifteen years." The point has been ruled adversely to appellant's contention in *Fitzgerald v. Amrine*, 154 Kan. 209, 117 P. 2d 582, and the authorities cited therein.

We find no error in the record. The judgment of the court below is affirmed.

Hoch, J., not participating.